The creditors in this case tried to collect over $40,000 in discharge fees based on a frivolous theory that any reasonable, informed party would immediately recognize as wrong. They targeted those discharge fees under a pre-petition contract for a pre-petition breach already subject to pre-petition litigation. Their only excuse for that misconduct was that the debtor somehow voluntarily returned to the fray. The $45,000 was the amount of fees claimed by Sherwood, Chenkey, and Merck for after the petition was filed, correct? There was post-petition fees. Oh, that's true, your honor, but post-petition fees based on a pre-petition contract and pre-petition litigation, which is the key, that is a classic excuse under the code. Are you relying on the Ibarra case? I'm sorry, your honor? It's Ibarra. Are you relying on Ibarra? Well, we're saying that their conduct cannot be excused under Ibarra, and it can't be under a classic understanding of the code. Again, Taggart sought bankruptcy to avoid the claims in that pre-petition litigation. That was partly what prompted the bankruptcy itself. The claims were squarely disclosed in the bankruptcy. But Mr. Geiser, didn't Taggart also have a counterclaim in which he asked for attorney's fees? There was a counterclaim pending, your honor, but Taggart sought to dismiss himself from the case, which would have taken the counterclaim with it. The only reason that that counterclaim stayed is because he was compelled to be there by the creditors themselves after he attained his discharge of the very claims at issue in that case. And to the extent the counterclaim wasn't dismissed... It's just his fee, the statement, the motion. I'm sorry, I didn't pick up the... That must have been a mistake. Oh, I'm sorry, your honor. Can I ask you a question, Mr. Geiser? I have a question for you. So under the Supreme Court's opinion, we're supposed to look objectively at what happened, correct? That's correct. So when Sherwood and company filed, sought attorney's fees for the post-petition work, why was it... For putting aside what the Superior Court ultimately did, putting aside what the bankruptcy court did, just looking at it at that time, what was objectively unreasonable? Your honor, and first, your honor is correct to put aside those other rulings because it's a substantive standard looking at their conduct. It was objectively unreasonable in both factual ways and legal ways. Actually, it was unreasonable because the only excuse for seeking that the post-petition fees based on a contingent claim that was discharged in the bankruptcy is if Taggart had voluntarily returned to the fray. Now, under the court's O'Barra decision, which I think is clear as day, it says that the debtor has to have voluntary and affirmative conduct. Taggart's voluntary and affirmative conduct here was immediately asserting his rights under the discharge saying he wanted nothing more to do with the litigation. Asking this from the victim, he's compelled to be there by the predators themselves. That is the opposite of voluntary. I'm not aware of... Mr. Geiser, could you do me a favor? You're moving away from the mic and I'm losing you. Just a bit. Could you back up just a bit in your remarks? Sure. So what I was saying, your honor, please stop me if you've already heard it. I hope that's better in terms of the audio. Yes, it is better. All right. The reason that it's not factually or legally objectively reasonable is that in order to satisfy O'Barra's standard, the creditors have to show that the debtor acted in a voluntary and affirmative way to revive litigation that had been dismissed and discharged in the bankruptcy case. The only conduct that Taggart did in this case was... ...asserting his discharge rights in the bankruptcy court and asking to be dismissed from the case. That is the very opposite of voluntary and affirmative conduct. He didn't want to return to the fray. He was compelled to return to the fray by the creditors themselves. And that fact is undisputed in this litigation. Does it make any difference that once he got back in... He asked for the state proceedings to be dismissed and the state court said no. Litigation resumed and he participated, essentially. Does that make a difference? Not in this case, and if I could explain why. His participation first was minimal. It was against his will. It was involuntary. And all he did in terms of the counterclaim, which I think is, in fact, the creditors' best shot at trying to come up with any theory at all, but it's a clear pretext. The failure to dismiss the counterclaim was a technical oversight. Taggart did not try to obtain the fees. The district court, as the district court explained, the counterclaim could not have produced fees for Taggart unless he had prevailed on the merits. And he was doing his best not to participate in the case at all. He didn't appear in a trial except when he was compelled. He sought not to be deposed a second time in the litigation. These are not the kind of facts that remotely resemble in any conceivable way any of the fact patterns that O'Barra found fit within the narrow exception in the general rule that when a claim is discharged in bankruptcy, it cannot be pursued by the creditors in post-bankruptcy litigation. Mr. Geiser, can I interrupt you for just a second to follow up on something that Judge Paz asked you? The district court found that Taggart had not contributed to the fray, correct? That's correct. All right. Is that a finding that we are reviewing de novo or based on abuse of discretion? Your Honor, I believe it is a mixed question. There are aspects of the finding that are factual aspects that are legal, but the factual finding is looking to see what did Taggart actually do in the case. And the court clearly found that Taggart tried to, in the court's words, extricate himself. He added a complete defensive posture in the litigation. The court also pointed out that none of the creditors ever asked Mr. Taggart to dismiss his counterclaim for fee. Again, this was an oversight. Taggart was not incurring attorney's fees in the case. They were minimal because he wasn't participating. I still don't have an answer to my question. Is it abuse of discretion review of the district court's finding that he didn't return to the fray? Or do we look de novo at the facts and the law? Well, Your Honor, again, I think that the Supreme Court recently held in the Village of Lake Ridge case in a different bankruptcy context. Mixed questions can be challenging. I think that the right answer here is that you look to the factual findings for clear error. So what actually happened below? What did Mr. Taggart do? Why did he do it? What did the creditors do? Why did they do it? And you look to the legal standard de novo. So the legal standard here, I think, is set forth in both our case and in the earlier precedent cited in the Estolino Villa case, which goes back for decades. The very simple proposition that when you have a contingent claim for fees. If you want us to go to the district court. Raise your hand. Can you hold on a second? Judge Bancroft, could you hold on just one second? Judge Levy. Now, if we're reviewing all of this de novo, in order to determine whether or not there is any semblance of legality on the part of what the creditors did, we have to look exclusively to the conduct of the post-bankruptcy. And my question to you is, first of all, that we don't have to find or don't the criteria is not to look for whether or not what the creditors did was lawful. It's whether or not the conduct might be lawful. That's what the Supreme Court is telling us. We're to look at the conduct of the bankrupt. I don't mean bankrupt, I mean creditors. And decide whether or not that might be lawful. Now, let me ask you, does the record show that Mr. Berman, who was a co-defendant, ever told the trial court in the state system that he was withdrawn as Mr. Taggart's lawyer? Your Honor, I'll answer that question directly, but I do want to take a slight issue with what the Supreme Court standard is. But to answer the factual question directly, Mr. Taggart at times was represented by Mr. Berman at the trial. Other times, Mr. Berman made clear he was representing himself. So it was because, again, Taggart's involvement in the state court was limited. Taggart did not want to be there. He was not asserting any claims. He was in a purely defensive posture. Am I right that Berman, at the close of the case, moved for dismissal of the claim against Taggart? He did, Your Honor, asserting Taggart's rights under the discharge. Well, but he is doing that with the authority of the bankrupt, is he not? Or is he just a rogue lawyer there that is out of control? No, Your Honor. When he represented and filed something on behalf of Mr. Taggart, he was doing it with Mr. Taggart's permission. But again, to be very clear, the standard is, did the bankrupt, this is under OBARA, did the bankrupt voluntarily and affirmatively re-enter the fray? And I don't see how any rational being can look at these facts and say there was a discharge of the claims. Taggart said, I want to be dismissed from the case. And he was compelled to participate against his will. As a matter of plain English, that is the very opposite of a voluntary return to the fray. Well, he was the owner after the bankruptcy of the potential claim for attorneys fees, was he not? He was, Your Honor, and he tried to be dismissed from the case, which would take that claim with he was not trying to assert that claim. It was a technical. Whose mistake was it that he didn't move to dismiss his counterclaim? I would say that I'm not sure where to lay the blame on that. Again, it was an oversight, but I think this is important to underscore, Your Honor. The creditors never once said, you're not dismissing your counterclaim, so clearly you're trying to participate. Had they raised that issue, the district court made that finding, by the way. If you look to district court's opinion, it points that out. That the creditors, all they had to do is say that, Mr. Taggart, your counterclaim is still pending. You must be trying to return to the fray. He would have said, I'd gladly give it up. He was declaring bankruptcy to avoid the potential of fees in this litigation. He was not trying to participate. He was trying to extricate himself. Who filed the notice of appeal from the judgment against him? I believe it was Mr. Berman on Mr. Taggart's behalf, but again, Your Honor, this is after he's been compelled to participate. I get you on your version of compelling to participate, but he was a defendant in the case with a counterclaim. He never dismissed his counterclaim. He never said, I confess judgment. He said, I want you to dismiss this against me, and I want to leave this convoluted transaction in place by which his lawyer winds up in ownership of the corporation that owns the one-fourth interest in the park, whatever you call it. I don't want to consume any more of your time. You say what you want in response and I'll interrupt you. Please interrupt because these are very important points. I do want to make a few things very clear factually. Mr. Taggart did not say that he wanted to leave the transaction in place. He said, I have no interest in this case. I don't care about the outcome. I want to be left alone. In other words, I want my fresh start. I declared bankruptcy to avoid this mess, to avoid any liability under the claims, under the pre-petition contract for the alleged pre-petition breach, including attorney's fees. He came back and said, in light of my discharge, I'd like to be dismissed entirely from the case, which takes his counterclaim with him. He was not pursuing the case on the merits. Again, as a pure matter of fact, I don't see any basis for saying that this fits anywhere within the universe of the narrow exceptions that a borrower recognized, where a creditor can seek liability or post-petition fee, even though that contingent claim was covered facially by a discharge. Now, to get back to the Supreme Court's order, the Supreme Court is saying that the creditor has to have an objectively reasonable basis for seeking the discharge. Now, I do think the first step is, is there a violation of the discharge? The second step is, if there is a violation of the discharge, was the creditor's belief was wrong, but was their wrongful belief objectively reasonable? Do they have an excuse? Now, in this case, there's no debatable by contention that this was not a violation of the discharge. If you look to section 524A2, the discharge or continuation of a case or any act to collect or offset a discharge debt. Now, in this case, the general judgment that was lodged by the debtors, and by the way, they did not seek permission to do this. The creditors lodged a judgment at the end of the case seeking the discharge without permission as an offset, and they made that clear in the hearing that follows the exception to that judgment. We're losing you, Mr. Geiser. We've lost your voice. I'm sorry. Can you hear me now, Your Honor? Now, we can. Okay, I'm sorry. I didn't sound like there was some background noise, but if you look to pages 659 to 660 of the record, you'll see that the creditor's counsel says unequivocally, we want an order that's an offset now. We would simply want the language, they're referring to the language of the general judgment, filed for attorney's fees or costs against Mr. Baker individually. That would be an offset. Keep your voice. Mr. Geiser, we can't hear you. You got to keep your voice near that mic. I'm sorry, Your Honor. This is on page 660 of the exception, and because it's there, I don't want to take the time to do too much with it. You'll see that the creditors specifically say they're seeking an offset, and they did that without any permission from the court. What we have is an attempt to collect discharge fees without any permission from the court after compelling the debtor to return to the case against his will. Now, that is a flat-out violation of the discharge injunction. I think Judge Bea may have had a question for you. No, it's good. I don't. All right. In that case, I'll reserve it. Would you like to save your remaining minutes for rebuttal, Mr.? I would, Your Honor. Thank you very much. Okay. Good morning. Go ahead. We're from the Appellees now. Yes. Good morning. I'm sorry. I was a little quick. Janet Traer on behalf of Appellee Shelly Lorenzen, and I am going to—I believe I've heard from Mr. McMillan, and unless the court has questions about his cross-appeal, I'm going to take the whole 20 minutes, even though he initially reserved five. So, at least I'll start. So, let me first clarify about what's before you on this appeal. As far as Ms. Lorenzen is concerned, we are not asking for any cross-appeal ruling on the return to the fray issue, and it's our view it doesn't matter how the return to the fray issue came out for the purpose of the contempt issue that's before you. In other words, whether the Appellees had an objectively reasonable belief that they were able to obtain post-discharge fees. The Supreme Court rejected Taggart's proposed strict liability test, and the Supreme Court, as you know, adopted an objective test. Under that test, the court may find contempt violation sanctions of a court order only if there's no objectively reasonable basis for concluding that debtor's conduct might be lawful. Stated another way, under the fair ground of doubt standard, civil contempt may be appropriate when the creditor's actions are based on an objectively reasonable understanding of the discharge order. Here, the respondents argued below that the acts of Taggart did amount to a return to the fray, and they believed that the test under Iberra was met, but they didn't just act on their assumption. How did Taggart's actions meet the test of Iberra, which focuses, if you read it carefully, I mean it focuses on the affirmative acts of the debtor in that case. What were the affirmative acts here? Well, the words of the decision are voluntary and in this case... So, what your position is, is that Taggart acted in some sort of affirmative way, and therefore he returned to the fray, and therefore you could seek post-judgment attorney's fees, post-petition attorney's fees. Because I'm asking you from the creditor's perspective at that time, to allow you to say objectively, oh, it looks like we have a reasonable basis here to seek post-petition attorney's fees. Well, there are a number of things. He had his counterclaim, as has already been discussed, and the motion to... But he had that before the petition was filed. I mean, he had that... He did. Didn't he file that? That was at the... Yes, he filed it. Yes, he filed a motion to dismiss in the trial court. So, his attorney appeared, filed a motion to dismiss the claims against him. He did not withdraw his counterclaim for fees. That remained in the case, and if you look carefully at page 610 of the excerpt of record, the fact that, oh, he mentioned... Can I ask you one question? If the state court had granted the motion to dismiss, how is it... What would be the basis for his counterclaim for attorney's fees? He said it would be like a default. It wouldn't be a default situation. He had prevailed in the action, and under the operating agreement, he would be entitled to fees, and the trial court so found. The trial court said that... No, but wait a minute. If the trial court had granted his motion to dismiss him from the case, how... I don't understand how the creditors could not have prevailed. He was a prevailing party by virtue of the dismissal, and once the claims were dismissed, he was entitled to the fees under the operating agreement. Let me tell you what the state court judge said about that on page 762 of the excerpt of record. Taggart never abandoned his counterclaim for attorney's fees. Rather, he continued to pursue post-petition that the plaintiff's claim against him be dismissed, which, if successful, would have led to Taggart having a contractual right to obtain his attorney's fees. That was the law, the Oregon law, applicable to this under the contract, and that's what the judge has asked you. Wasn't the motion dismissed by Taggart to dismiss himself from the lawsuit in which he had a claim, had a counterclaim? He asked to dismiss himself in the lawsuit, but he couldn't be dismissed because he was a necessary party. Well, whether he was a necessary party or not, after he had sold his or signed his interest to Berman is a question that we don't have to go into, but the fact of the matter is that if he had been dismissed pursuant to his request, he could not have exercised his counterclaim, including his attorney's fees claim, correct? I don't think that's correct, and the trial judge found that was not correct. He was not in the case. No, his motion to dismiss only stated it was a motion to dismiss the claims against him. He did not move to dismiss his counterclaim, and if he was dismissed, he would have been a prevailing party, and this is according to the trial judge, and he would have been entitled to his fees. He also did other affirmative acts in the trial court, including requesting for a protective order relating to a deposition. He listed the attorney's fees in the bankruptcy proceeding as an asset, and those were returned to him upon the closing of the discharge matter, and as a result of all of those things, yes, Judge Levy. Judge Levy has a question. It's my recollection that there was more than just a request for attorney's fees in the counterclaim. There was some other request also. Was there not in that counterclaim going to the whole transaction? No, the counterclaim was only for fees under the operating agreement. However, he couldn't just dismiss himself from the lawsuit in which he was a necessary party. I understand that part. I understand your argument there. I'm just asking if there was any more to the counterclaim than simply the request for attorney's fees. No, that was all within the counterclaim. Okay, that was a misimpression that I had then. I don't know where I picked it up. So, the creditors here believed they fell within Ybarra because the debtor continued to assert his counterclaim for fees. He carefully worded of only the claims against him, not the claims he was making. In addition to his participation requesting a protective order, he participated in form of judgment arguments. And so, they believed his actions fell within Ybarra. Again, they didn't proceed based on their assumption. They asked the trial court who knew all the facts about his voluntary participation. Whatever they were, the trial judge in the state court was the person with the most knowledge of what had happened. The creditors cited Ybarra, advised the trial court that there was a discharge injunction, and requested a ruling as to whether what Taggart did was sufficient to fall within the return to the fray ruling in the Ybarra case. And the judge, reviewing the facts that he had experienced with his own eyes before him, believed that the Ybarra test had been met, and therefore the discharge injunction did not include post-petition fees. Again, the trial court's view and finding as to return to the fray was later reversed by the Oregon Court of Appeals, correct? Well, yes, but the Court of Appeals relied upon the district court opinion of Judge Mossman. So, after the state court ruled, then the debtor brought the case in front of the bankruptcy court and wanted contempt sanctions for having relied on the state court ruling that he'd returned to the fray. But Judge Dunn, reviewing both for clear error and de novo, found that the debtor had returned to the fray under the Ybarra test. And so, he confirmed what the state court had done. How could we be objectively unreasonable in believing that the debtor returned to the fray when two jurists reviewing the same facts and the same law, the Ybarra test that everyone at that time agreed applied, found he returned to the fray? And it is true, Judge Bia, that that was reversed by Judge Mossman, the district judge, who didn't find there were no facts to support the return to the fray. He found that there were not sufficient facts to return to the fray. I don't think we're on the wavelength. My understanding of the record is that the Oregon trial court's determination that the debtor returned to the fray was appealed to the Oregon Court of Appeal. And the Oregon Court of Appeal reversed that decision. And you or whoever was then acting for the creditor sought a petition to the Oregon Supreme Court, which was denied. Is that not the record? That's true. And the state court ruling, which of course came years later, relied on the district court's opinion, Judge Mossman's opinion, that there weren't sufficient facts to return to the fray. But yes, the fact is the state court ultimately reversed it. But on the review that we're looking at here, the question is the propriety of the imposition of contempt sanctions. And so that requires a clear order that the creditors knew the terms of and the violation of that order and an objectively unreasonable view of the scope of that order. Here, the creditors sought information from the court, a ruling as to whether the debtor returned to fray. And both the judge who saw the acts of the debtor and an experienced bankruptcy judge, Judge Dunn, found he did return to the fray. Whether the courts later reversed that, again, it's the same set of facts. Reasonable people disagree. Two people initially found he had returned to the fray. Two later people found he did not return to the fray. I think it's very significant that Judge Mossman, the district court's decision that the facts were not sufficiently voluntary and affirmative to return to the fray, he found that there was no Ninth Circuit authority describing the return to the fray, what it took in order to get there. I think it's important that the discharge injunction wasn't a clear order because there was the return to the fray exception to it. And rather than make an assumption, we asked the court whether the exception applied here. And the first two courts said yes. The fact the later two courts said no, under the Supreme Court's objective contempt test, you can't find in contempt because reasonable people disagree. Troy, let me ask you. When I first asked you a question, it was about did Haggard voluntarily return to the fray? You seem to put a little special emphasis on that in reference to the litigation in the state court once it got underway. That is, you seem to suggest that, well, even though they dismissed the case, once he was stuck in the case, that he voluntarily participated in his defense. Is that a distinction that's worth noting? The court did not. That is how he handled himself once the state court denied the motion to dismiss at the outset of the trial. I'm not sure I understand the question. The case was ready for trial in the state court, correct? And Haggard then filed his motion to dismiss right before the trial got underway. And this judge said, no, we need you because given the nature of the claim, you're a necessary party. Okay. So then he participates and defends himself to the extent that counsel referred to earlier that he objected to the form of the judgment and took other affirmative actions. Do you characterize that as voluntarily participating and qualifying? How does that fit under Ibarra? This is what I'm asking. It was voluntary in that he made a choice. And his choice was under the circumstances that required his involvement as a necessary party, he could have simply unwound what turned out to be found illegal transaction in transferring his interest to Berman and given up his LLC interest and let plaintiffs buy out his share as the operating agreement provided. And so he affirmatively by simply dismissing that did not actually do anything. He had to necessarily be involved in the case. And he made a choice. It was voluntary not to do that, which needed to be done to actually get out. I think it was the bank. I can't remember if it was Judge Mossman or who, but it struck me as notable that when he could not get out of the case, it seemed like it was reasonable for him to take whatever steps were necessary to defend himself. Well, it would have been reasonable for him if he truly wanted to be out of the case to do the acts which needed to be done, and that is to turn over his interest and to allow the partners or the LLC members to buy him out. And that's not what he did. And he left his counterclaim on file. He didn't have that interest. He had already transferred it to Berman, and he filed a pre-petition. He filed a Chapter 7 petition. Whatever happened was now belonging to the trustee in bankruptcy. So he didn't have any interest to protect. They should have gone after Berman and tried to cancel the transaction from Berman. Well, they did that too. Berman was a party, but they were both necessarily involved because the transfer to Berman was illegal, impermissible under the operating agreement. So what the trial court did was the plaintiffs asked, and they unwound the transaction, which leaves it back with Taggart, which in turn, his interests need to be sold to the plaintiffs under the terms of the operating agreement. The court could have annulled the transfer to Berman without Mr. Taggart in the case. Taggart had defaulted to Berman, and an acquired title action take his interest away from him. So I don't see why Taggart was a necessary party. Well, that's what the trial court ruled, and Taggart, it was, he needed, because the rights of the parties in the court couldn't be adjudicated without him, because the transaction needed to be unwound. Because it needed to be unwound, it would be left back with Taggart, and I don't believe that violates the discharge injunction. Judge Levy. As part of this transaction by which Berman became the owner of the limited liability corporation that owed a fraction of the business park, that was for the payment of attorney's fees, was it? And partially that transaction, that transaction between Taggart and Berman was to pay pre-bankruptcy attorney's fees, was it not? Right, but I thought it was between Berman and, I thought the part of it was between, fees between Berman and Taggart. Yeah. But I don't think that is pertinent here. You don't? Oh, they paid off the judgment and gave him cash. Yeah, but in order to unwind the transaction, that is, if the state court was going to unwind this whole transaction, it had to make it binding on Taggart, did it not? And that's why he was a necessary party to the proceeding. He could have confessed judgment and gone home. He'd have been in the same position he was when the court ultimately decided that it should unwind that whole transaction, and it did that with a judgment that ostensibly was binding on Taggart because he had to be a party to that whole judgment. It was to have effect, I think. Correct. So, let me just go back to about the whole return to the fray and affirmative actions and things. Ultimately, in this court's review of the imposition of sanctions, or review of the BAP's refusal to impose contempt sanctions against the appellees here, it doesn't matter for this court's evaluation of contempt sanctions whether the debtor did or did not return to the fray. The respondents were not objectively unreasonable in requesting a state court ruling on the scope of the discharge injunction and then relying on the state court ruling and later the bankruptcy court ruling to the same effect that the debtor had returned to the fray. Again, the fact that this was later reversed by two other judges, one relying on the other, the district judge, does not take away from the objective reasonableness of the creditor's actions in seeking the trial court's ruling on the return to the fray and ultimately relying on that in seeking fees. I just have one comment, and the only problem I have with that argument is that it was the creditors that started this counterclaim for fees. No, you're the one. The creditors affirmatively sought fees post-petition. Taggart didn't. Well, he didn't prevail. The concern was he would have if he had prevailed. Well, that's not what we're dealing with. They held the creditors in contempt, and it all started with your seeking fees. Well, we first sought the court's ruling on whether Taggart returned to the fray under Iberra, which in turn provided guidance as to whether the discharge injunction did or did not apply to the post-petition fees. Judge Letourneau ruled that he had returned to the fray and therefore seeking the fees did not violate the discharge injunction because they weren't discharged. That's why it's objectively reasonable when Judge Letourneau and later experienced bankruptcy judge, Judge Dunn, found that he had returned to the fray for the creditors to seek fees. We think under the Supreme Court's new ruling, there's no objectively reasonable basis to find what the creditors did was wrong or against the law, and therefore the rejection of this court didn't remand the first time around. There's nobody asking to remand. We simply ask you to affirm the BAPT's decision. Thank you. Thank you. Mr. Geiser, you had, I think, about three minutes. There we go. I can't hear you. Can you hear me now? Yes. Thank you. So my very able friend misspoke. It is not true. It is factually false on this record that the creditors first sought permission, sought a ruling on Ibarra before seeking fees. Again, they lodged the general judgment that forced Taggart to object on the strength of his discharge rights. They then said that we are seeking an affirmative offset based on the transcript of the hearing in May, which I gave you the excerpt of record page earlier, and then they sought a formal fee petition. They did not seek permission first, but even if they had, the Supreme Court made clear that when you violate the discharge, which you do by seeking an offset of discharge fees, you need an objectively reasonable basis for your conduct. And my friend, again, is trying to rely on the fact that two judges supported their conduct at some point in the case. That is not the question. Courts do get things wrong. They get things clearly wrong under clear review. They've used their discretion in the Supreme Court and this court understand that state courts can act in an objectively unreasonable fashion. It is a substantive benchmark that the Supreme Court announced in this case. And if you look to the state trial judge's ruling, you'll see that it first misstates what Ibarra holds. And the reasoning is it's the holding was effectively unreasoned and it was rejected by the district court and the state appellate court. That is not the kind of ruling that supports just by an objectively reasonable basis. The question is what is the substance of the claims? Now, in asking what were the volunteers, one thing that the creditors have suggested is that Taggart should have simply acquiesced in their claims. He should have said, you're right. You get the relief. I'll unwind it. That's not the way that this works. He sought to discharge the claim in bankruptcy. The creditor's claim had been discharged. The answer is it heads I win, I can sue you for a discharge claim after the bankruptcy is over. You either have to acquiesce and give me everything I want, or if you don't acquiesce and then I compel you to be there, then you'll be deemed to have voluntarily waived your discharge rights. That is a recipe for creditors to do exactly what the Supreme Court said they should not do, which the Supreme Court voiced caution about creditors standing on shaky legal ground to collect discharge debts, forcing debtors back into litigation with its accompanying costs to protect the discharge that it was the very purpose of the bankruptcy proceeding to provide. That's what Taggart said. Can I ask you a question? What is the relief you seek? Do you seek us to order the PAP decision to be vacated and have PAP remand the case to the bankruptcy court to determine whether there was no fair ground of doubt or any impeachment? Do you think that we should simply reverse and enter judgment in your favor because the facts are incontestable? I believe the latter makes the most sense, but I'll take the former if the latter is not available. I do think that in this case because objective reasonableness is an objective standard and the facts in this case are undisputed. It is clear that Mr. Taggart sought to dismiss himself from the case on the strength of his discharge and that the creditors compelled his attendance after that. Given those facts and given that it is not enough to simply refer to any judge in any court at any level who's ever embraced their claim, no matter how patently frivolous or unreasonable, they need a substantive, objectively reasonable basis for seeking to burden the fresh start and they have not satisfied that standard here. I'm sorry, I see I've gone over my... Yes. Thank you, Mr. Kaiser, and thank you, counsel. We appreciate your arguments this morning. With that, we'll submit the case for decision and thank you. We'll end our session. Thank you. I'll rise. This court, this session stands adjourned.
judges: Leavy, Paez, Bea